**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

Nancy Storm,

       Plaintiff,

    v.                          Case No.  1:03cv554

The Sabre Group,               District Judge Michael H. Watson

       Defendant.

**OPINION AND ORDER**

Before the Court is the April 29, 2005 Motion of Defendant The Sabre Group (hereinafter "Defendant") for Summary Judgment (Doc. 17).  Plaintiff Nancy Storm (hereinafter "Plaintiff") filed a Memorandum in Opposition on May 23, 2005 (Doc. 20). Defendant filed a Reply Memorandum on June 3, 2005 (Doc. 23).[1]

This matter is now ripe for review.  For the reasons stated herein, the April 29, 2005 Motion of Defendant for Summary Judgment (Doc. 17) is hereby **GRANTED IN PART** and **DENIED IN PART.**[2]

I.    **FACTS**

Plaintiff, born May 31, 1943, began her career with Defendant as a General Sales Agent in the San Francisco Reservations Office of American Airlines (hereinafter

---

[1]Defendant filed a Supplement Memorandum to its Motion for Summary Judgment on August 8, 2005 (Doc. 40).  However, as trial in this matter is set for August 15, 2005 and Plaintiff will not have the opportunity to respond prior to trial, the Court will not consider this memorandum with respect to its ruling on Defendant's April 29, 2005 Motion for Summary Judgment (Doc. 17).

[2]The Court notes Plaintiff does not oppose Defendant's Motion for Summary Judgment with respect to Counts I and V (hostile work environment), Count VI (state law age discrimination claim), and Counts VIII and IX (retaliation claims under federal and state law).  As such, the Court will proceed on Counts II and IV (gender discrimination claims under federal and state law), Count III (federal age discrimination claim) and Count VII (public policy claim for gender and age discrimination).

"AA")[3] on January 30, 1967. (Plaintiff Depo., p. 73, Exh. 2)  From 1967 to 1992, Plaintiff held a number of positions with Defendant.[4] (Id, pp. 78-97, Exh. 2)

In 1992, Plaintiff's supervisor, Glen Jones, informed Plaintiff her department was in danger of elimination. (Id. 98-99)  As such, Plaintiff began searching for another position within the company.  She soon received a telephone call from Tom Walsh, a regional manager in Chicago, Illinois. (Id., pp. 99, 120-121, Andrew McAdams Depo., p. 121)  Mr. Walsh stated he had heard Plaintiff was interested in a position as a Telecommunications Network Analyst (hereinafter "TNA"). (Plaintiff Depo., p. 121)  He informed her a TNA position was available in the Cincinnati Communications Center (hereinafter "COM Center"). (Id.)  Plaintiff indicated her interest in the position to Mr. Walsh, but stated she did not have any experience as a TNA. (Id., pp. 121-125)  Mr. Walsh informed Plaintiff he was interested in an individual with strong customer service skills and he had very experienced employees in Cincinnati who could mentor her.  (Id.)

At Mr. Walsh's request, Plaintiff flew to Cincinnati and met with Keith Ziegler, COM Center Supervisor. (Id., p. 126)  Shortly after her visit, Mr. Ziegler offered Plaintiff the TNA position. (Id., p. 127)

At the time of Plaintiff's visit and hire, Mr. Ziegler reported directly to Mr. Walsh. (Keith Zieger Depo., p. 15)  Mr. Walsh indicated to Mr. Ziegler, prior to staffing the

---

[3]Defendant, at its inception, was a subsidiary of AMR Corporation, the parent company of AA.  In 2000, Defendant became a corporate entity separate from AMR.  However, Defendant recognized its employees' previous years of service with AA.

[4]Plaintiff held the following positions:   Flagship Agent (1969-1977, San Francisco); Tour Control/Sales Agent (1977-1978, Los Angeles); Overseas Desk Control Agent (1978-1982, Los Angeles); Confirmation/Flight Information Agent (1982-1984, Los Angeles); Group Control Agent (1984-1986, Los Angeles); Customer Services Specialist (1986-1987, Tulsa); Customer Services Coordinator (1987-1988, Tulsa); Customer Services Quality Assurance Analyst (1988-1990, Tulsa); Inventory Systems Development, Analyst/Instructor (1990-1992, Tulsa).

vacant TNA position, he should give heavy consideration to female and minority candidates. (Id., p. 41)  At the time of Plaintiff's hire, there were no female employees working at COM Center. (Id., p. 41)

During her employment at the COM Center, Plaintiff allegedly encountered a bias toward women in the workforce from her co-workers and Mr. Ziegler.  In 1992, the ACD coordinator, Ray Peltier, had a large poster of a woman in thong bathing suit hanging in his office. (Plaintiff Depo., p. 417; Ziegler Depo., Exh. 1).  Plaintiff informed Mr. Ziegler she found he poster offensive, and he, allegedly, told her to say something to Mr. Peltier. (Plaintiff Depo., p. 154)  Plaintiff spoke to Mr. Peltier who allegedly told her he was not going to remove it. (Id., p. 155)  When Plaintiff informed Mr. Ziegler of her conversation with Mr. Peltier, he allegedly said it was Mr. Peltier's poster and he was not going to force him to take it down. (Id.)

When asked about the poster, Mr. Ziegler stated he did not recognize the poster and that it was not hanging in the COM Center when Plaintiff began her employment. (Ziegler Depo., pp. 76, 78)  However, Dan Goetz, another TNA in the COM Center identified the poster and recalled seeing it displayed in the ACD office. (Goetz Depo., p. 37)

Additionally, at an group meeting in 1992 or 1993, in which Mr. Ziegler was present, a fellow TNA, Rick Romani, allegedly stood up, turned to Plaintiff, and asked "[w]ell you want to see a real Italian stallion?" (Plaintiff Depo., p. 344)   Plaintiff then alleges Mr. Romani mimicked unzipping his pants, grabbing his genital area with one hand and moving it up and down. (Id., pp. 344-45)

Furthermore, Plaintiff alleges Mr. Ziegler allegedly voiced discriminatory comments toward woman in a conversation he engaged in with Plaintiff in 1993. Plaintiff maintains Mr. Ziegler informed her he would neither promote a woman over a man nor give a woman a raise in compensation higher than a man as men had more expenses than women. (Plaintiff Depo., pp. 183-84) It is also alleged Mr. Ziegler, in 1992 or 1993 (Plaintiff Depo., p. 325), opined women did not belong in the workforce in a management position. (Id., pp. 182-83)  Plaintiff also alleges a co-worker told her  Mr. Ziegler stated,"women were only good for one thing,..their hole." (Id. 323-24)  Finally, David Hoffmann, another TNA in the COM Center, testified that sometime after November, 1997[5], Doug DeTellem brought a pornographic movie into the COM Center which they watched with  Mr. Ziegler and, possibly, another TNA.  (Hoffmann Depo., pp. 42-43)

In 1999, Defendant instituted an involuntary reduction-in-force (hereinafter "1999 RIF") (Cindy Gilmore Depo., p. 27).  An aspect of the 1999 RIF process required, if layoffs were necessary, the least senior employee to be subject to layoff "if all criteria are essentially equal."  (Gilmore Depo., Exh. 1)(hereinafter "seniority policy")

Mr. Ziegler recommended Plaintiff for termination to Jack McAdams, Mr. Ziegler's manager at the time of the 1999 RIF, who ultimately approved the suggestion.  (Id. 129-31)  Plaintiff was the only TNA terminated at the COM Center in the 1999 RIF.  (Ziegler Depo., p. 119)

---

[5]Mr. Hoffmann was unable to state an exact date for this incident.  He began his employment in the COM Center in November, 1997 and stated it was "more definitely when I was still in the rotation, before I went into my permanent midnight shift."  (Hoffmann Depo., p. 42)

Mr. McAdams was unable to recall the reason for the reduction in force at the COM Center. (McAdams Depo., p. 29)  Moreover, he was unable to remember the number of people he reduced in his group, the number of people in the region affected by the reduction, or whether anyone other than Plaintiff was affected by the 1999 RIF in his region. (Id., pp. 29-30)  Additionally, Mr. Ziegler was never informed of the specific number of employees who would be subjected to termination at the COM Center. (Ziegler Depo., p. 118)

At the time of the 1999 RIF, in addition to the COM Center, Defendant had four Communication Centers located in Hartford, Connecticut; Raleigh, North Carolina; Dallas-Ft. Worth, Texas; and Tucson, Arizona. (Ziegler Depo., Exh. 26)  Defendant was unable to identify any other TNA at these four Communication Centers who were terminated pursuant to the 1999 RIF. (Id., p. 148-49; McAdams Depo., pp. 33-34; James Cadigan Depo., p. 61; Goetz Depo., p. 78).

## II.  ANALYSIS

### A.    Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(C).  The moving party has the burden of showing an absence of evidence to support the non-moving party's case.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for

summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). The mere existence of a scintilla of evidence to support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the non-moving party. *Id.* at 252.

### B.    Gender Discrimination

#### 1.    Title VII

Plaintiff asserts a claim for gender discrimination pursuant to Title VII, which makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's...sex...." 42 U.S.C. § 2000e-2(a)(1).

In a case alleging employment discrimination in violation of Title VII, a plaintiff can withstand a motion for summary judgment by presenting either direct evidence[6] of discrimination or circumstantial evidence from which a jury may infer a discriminatory motive.  *Rallins v. Ohio State University*, 191 F.Supp.2d 920, 928 (S.D. Ohio 2002), *citing Kline v. Tennessee Valley Authority*, 128 F.3d 337, 348-49 (6th Cir. 1997).

A discrimination claim presented by circumstantial evidence is to be analyzed using the burden-shifting approach set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973).  First, a plaintiff bears the burden of proving a *prima facie* case of discrimination by establishing:

    1.    she is a member of a protected class;
    2.    she suffered an adverse employment action;

---

[6]Currently, Plaintiff does not present direct evidence of discrimination.

     3.      she was qualified for the position in question; and

     4.      she was replaced by a person outside of the protected class.

*Smith v. City of Salem, Ohio*, 378 F.3d 566, 570 (6th Cir. 2004), *citing Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000); *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582-583 (6th Cir. 1992).

However, when an employer is terminated pursuant to a reduction in force, the *McDonnell Douglas* framework is altered. *See Barnes v. GenCorp, Inc.* 896 F.2d 1457, 1465, n.1 (6th Cir. 1990).  Specifically, the fourth element is modified because the employer does not replace the employee. *Godfredson v. Hess & Clark, Inc.,* 173 F.3d 365, 371 (6th Cir. 1999) As such, the plaintiff must present "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out [the plaintiff] for discharge for impermissible reasons." *Id.*, *quoting Barnes* at 1465. This "extra" evidence must be "sufficiently probative" to permit the fact finder to believe the defendant intentionally discriminated against the worker. *Barnes* at 1466.

Upon establishing a *prima facie* case, an inference of discrimination arises, and the burden shifts to the defendant to articulate some legitimate nondiscriminatory reason for its actions.  *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254-56 (1981).[7]  If defendant provides a legitimate nondiscriminatory reason, the burden shifts back to plaintiff to demonstrate the offered reason is pretextual.  *McDonnell Douglas* at 804-805.  The plaintiff may prove pretext by showing either that:

---

[7]It should be noted, the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff."  *Burdine* at 253.  The *prima facie* case merely serves to raise a rebuttable presumption of discrimination by "eliminating the most common nondiscriminatory reasons for the [employer's treatment of plaintiff]," *Id.* at 254, and not to satisfy the plaintiff's ultimate burden of persuasion.

1.   the proffered reason had no basis in fact,
2.   the proffered reason did not actually motivate the adverse action, or
3.   the proffered reason was insufficient to motivate the adverse action.

*Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir.1994).

Currently, Defendant concedes Plaintiff establishes the first three prongs of the *prima facie* case. However, the parties dispute whether Plaintiff establishes the fourth prong. Plaintiff argues the record is replete with evidence from which a reasonable trier of fact could conclude Defendant singled her out for discharge based upon her gender. In support, Plaintiff relies upon the statements and behavior by Mr. Ziegler which Plaintiff contends demonstrates his disdain for women. Additionally, Plaintiff argues that although Defendant instituted the 1999 RIF, there was no legitimate reason for the elimination of a TNA position at the COM Center. As such, Plaintiff asserts the 1999 RIF was used as a cover story to single Plaintiff out for termination on the basis of her gender. Plaintiff maintains this argument Is bolstered by the fact in the Spring of 2001, the COM Center hired a male TNA, Charles Ward, from the Hartford Communication Center, even though there was no further attrition in the COM Center following Plaintiff's termination.

In response, Defendant maintains most of the evidence Plaintiff relies upon to demonstrate Mr. Ziegler's disdain for women does not involve him. Moreover, Defendant contends the record is devoid of any evidence demonstrating Mr. Ziegler was aware of the behavior or that Plaintiff even complained to him about the alleged problems. Further, Defendants argues the fact Mr. Ziegler hired Plaintiff undermines her position that he has a disdain for women. Defendant maintains it is unlikely Mr. Zieger would hire Plaintiff and keep her in the department for seven years and then use

the 1999 RIF as an opportunity to discriminate against her based on gender. Additionally, Defendant maintains Plaintiff's second-guessing of its business judgments is insufficient to establish the fourth prong.  Moreover, Defendant argues it amounts to nothing more than speculation by Plaintiff.  Finally, Defendant asserts Mr. Ward did not replace Plaintiff as he transferred into the COM Center eighteen months after Plaintiff's termination.  Finally, Defendant alleges Plaintiff's argument she was replaced by Mr. Ward is undermined by the fact, at the time of her termination, her work was divided among the remaining TNAs.

As stated above, in a reduction in force, the plaintiff is not replaced.  In this matter, Plaintiff appears to recognize that fact as her argument address the modified fourth element of a reduction in force *prima facie* case.  Moreover, the undisputed evidence establishes Plaintiff's duties were redistributed among the remaining TNAs. (Ziegler Aff. ¶7)  According, the Court finds as a matter of law Mr. Ward did not replace Plaintiff.

Turning to the evidence of Mr. Ziegler's alleged disdain for women, the Court must determine whether these alleged statements and behavior demonstrate relevant evidence of gender discrimination.  In so doing, the Court is mindful of,  as circumstantial evidence of discrimination, the corporate culture of a business in which the employment decision to discharge an employee is made:

> We have held that a supervisor's statement about the employer's employment practice or managerial policy is relevant to show the corporate culture in which a company makes its employment decision and may be used to build a circumstantial case of discrimination....

*Brewer v. Quaker State Oil Refining Corp.,* 72 F3d 326, 333 (3rd Cir. 1995) (citations omitted) (holding comment by CEO, "two of our star young men in their mid-40s.  That age group is our future", made almost two years before Brewer's termination was relevant evidence of age discrimination.)  Additionally, the Court finds the following discussion from *Conway v. Electro Switch Corp.,* 825 F.2d 593, 597 (1st Cir. 1987) (citations omitted), illuminating:

> A claim of discrimination need not be proven solely through direct evidence; circumstantial evidence may support an inference of discrimination.... Indeed, discrimination can often be of such a subtle, insidious character that a plaintiff may only be able to offer circumstantial evidence to buttress his or her claim. As this court has ruled, circumstantial evidence of a discriminatory atmosphere at a plaintiff's place of employment is relevant to the question of motive in considering a discrimination claim. While evidence of a discriminatory atmosphere may not be conclusive proof of discrimination against an individual plaintiff, such evidence does tend to add 'color' to the employer's decisionmaking processes and to the influences behind the actions taken with respect to the individual plaintiff....

Significant to the Court's analysis currently is the following deposition testimony by Plaintiff detailing a conversation with Tom Walsh in the summer of 1993[8], which is set out at length:

> A.[Plaintiff]:   I told Tom that I didn't think [Mr. Ziegler] had respect for women in the work force.
>
> Q,[Mr. Allen, Defense Counsel]:   Okay.
>
> A.:   I told him that Keith had said several times when he had come from downstairs after talking to the reservation managers and the head of the reservation office who were females that he was very angry and it wasn't at what was happening, it was that he said on more than one occasion that women do not belong in the work force in that type of a management position.

---

[8]Plaintiff Depo., pp. 177-178.

Q.:        ...So what is it that you're saying that you actually heard him say about women in the workplace?

A.:        I heard him say that women don't belong in the workplace in that position.

Q.:        And what position was he referring to?

A.:        I believe he was referring to the position that Lorraine Mace and Jeannie Glum...who are both interfaced with our office.  Lorraine was head of the reservation office and Jeannie was one of the supervisors that was responsible for all of their equipment and making sure – she was our interface in the office.

Q.:        And on how many occasions had you heard him say that?

A.:        He didn't say the same exact wording each time, but it was obvious that he did not believe that there should be women in the work force.  He said during a - - now, this is not what I told Tom, I don't think, but he said during a conversation at a meeting that he would never hire - - pardon me, he would never promote a woman over a man, he would never give a woman a raise higher than a man.
          And when I questioned him about how he could possibly say something like that, he said, [b]ecause men have much more expenses.  And I said, [s]ingle men don't.  He said, [f]amily expenses.  He said - - I said, [s]ingle men don't.  And he said that single men have to take women out and that women expect them to pay for everything and it's much more expensive for them, for the single man.

(Plaintiff Depo., pp. 182-184)

Additionally, the Court considers the following allegations by Plaintiff meaningful.

First, Mr. Ziegler's failure to remove the poster of the woman in a thong bathing suit

hanging in Mr. Peltier's office after Plaintiff informed him she found it to be offensive.

Second, Mr. Romani's behavior at a group meeting, in which Mr. Ziegler was present

and allegedly did nothing to discipline Mr. Romani.  Third, the statement attributed to

Mr. Ziegler that "women were only good for one thing...their hole."  Finally, Mr. Ziegler's

viewing of a pornographic video with Messrs. Hoffmann and DeTellem at the COM Center.

The Court notes, contrary to Defendant's assertion, the record is not devoid of evidence demonstrating Mr. Ziegler was aware of the behavior or that Plaintiff even complained to him about the alleged problems. Many of the statement are directly attributed to Mr. Ziegler. Additionally, with respect to the events discussed below, Mr. Ziegler is either alleged to have been present or to have actively participated in the behavior.

Assuming for the purpose of summary judgment Mr. Ziegler made the aforementioned comments, the remarks on their face suggest Mr. Ziegler harbors a bias against women in the workforce. This is further supported by his alleged inaction in rectifying, and/or disciplining, not to mention his active engagement in, behavior which could be considered offensive to women working at the COM Center. As such, the Court concludes a reasonable trier of fact could find Mr. Ziegler's alleged statements and behavior constitute circumstantial evidence of a discriminatory atmosphere at the COM Center and, more importantly, reveal his mind set when he decided to terminate Plaintiff's employment. The Court cautions it is not concluding Mr. Ziegler was speaking of Defendant's employment practices at the time of these alleged statements. Instead, they are statements of his personal belief. However, as Mr. Ziegler was the supervisor for the COM Center and the person who made the decision to terminate Plaintiff, a reasonable trier of fact could conclude they are an indication of the atmosphere of the COM Center and the managerial policy he utilized in making employment decisions and, thus, circumstantial evidence of gender discrimination.

The fact the alleged statements and incidents occurred approximately six years prior to Plaintiff's termination does not render them irrelevant.  To the contrary,

> [t]he rationale underlying the admission of such evidence militates against its exclusion on those grounds.  Evidence of institutional state-of-mind may be presented for...consideration...because an employer's willingness to consider impermissible factors, such as...sex...in one set of presumably neutral employment decisions...might tend to support an inference that such impermissible considerations may have entered into another area of ostensibly neutral employment decisions...an employee's termination...[A] general atmosphere of discrimination...may be one indication that the reasons given for the employment action at issue were 'implicitly influenced' by the fact that the plaintiff was of a given...sex....

*Conway*, 825 F.2d at 597-98 (citation omitted).  *See also Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 356 (6th Cir. 1998).  Moreover, the incident involving the viewing of the pornographic video occurred in late 1997 or early 1998.  Thus, this reveals Mr. Ziegler's alleged discriminatory attitudes and the discriminatory atmosphere of the COM Center was present less than two years prior to Plaintiff's termination.

The Court is mindful of case law which determines incidents and/or statements made mere months before termination have been deemed insufficient evidence of discrimination.  However, the Court is also cognizant of the fact each discrimination case rises and falls on its particular facts.  On these facts, the Court concludes the statements and/or incidents which span a five to six year time-frame, the last of which occurred less than two years prior to Plaintiff's termination, are relevant to demonstrate, at the least, a managerial policy of gender indifference at the COM Center. The weight to be given these statements and/or incidents are for the trier of fact to determine.

Finally, Defendant's reliance upon the "same actor" inference is misplaced at this point in time as a genuine issue of material issue exists as to whether Mr. Ziegler hired

Plaintiff.  Mr. Ziegler testified about a conversation with Mr. Walsh, his supervisor,

regarding candidates for the vacant TNA position, which Plaintiff subsequently was

offered:

> A.:        The conversations went to the effect that the opening that I should
> fill, I might think heavily about the candidates that are female and/or
> minority.
>
> * * *
>
> A.:        All I remember is to the effect that the - - [Mr. Walsh's] bosses
> structure - - people structure was light with females and/or minorities.
>
> * * *
>
> Q.[Ms. Myers, Plaintiff's Counsel]:        And did you essentially consider it a
> mandate from Mr. Walsh that you hire either a female or minority
> candidate for the vacant TNA position?
>
> * * *
>
> A.:        Mandate, no.
>
> * * *
>
> Q.:        You recall that he told you to think heavily about it?
>
> A.:        Yes, but I do not consider it to do it had we [*sic*] - - whatever you
> said the word was.  I took it as him telling me to think about it.

(Ziegler Depo., pp. 41-43).  Additionally, Plaintiff maintains she interviewed at the COM

Center at Mr. Walsh's request.  As such, a reasonable trier of fact could conclude that,

while Mr. Ziegler was the individual who extended the job offer to Plaintiff, the decision

to extend the offer was not the result of his independent judgment.  Instead, it was the

result of pressure, direct or implied, from upper management to diversify the COM

Center personnel.  The resolution of this issue is properly resolved by the trier of fact.

"Credibility determinations, the weighing of the evidence, and the drawing of legitimate

inferences from the facts are jury functions, not those of a judge." *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 255 (1986).

Turning next to Plaintiff's allegation she was the only TNA terminated company-wide in the 1999 RIF, the Court concludes a reasonable trier of fact could conclude this evidence demonstrates Plaintiff was impermissibly discharged based on her gender. While the Court recognizes, "[i]t is not the prerogative of the courts to engage in the post-hoc management of the employer's internal affairs by second-guessing how personnel could have been more equitably allotted, or cost-savings better realized." *Norbuta v. Loctite Corp.,* 1 Fed. Appx. 305, 314 (6th Cir. 2001 ) (citations omitted), it is currently faced with evidence of only <u>one</u> TNA, from Defendant's five Communication Centers, being terminated in the 1999 RIF. Moreover, there is no evidence that any other employee, but Plaintiff, in her region was terminated in the 1999 RIF. Further, Mr. Ziegler stated he was never informed of the specific number of COM Center employees who would be subjected to termination. This evidence, or lack of evidence, extends beyond second-guessing personnel decisions. Instead, a reasonable trier of fact could conclude, in light of Mr. Ziegler's statements and behavior, this evidence demonstrates Defendant used the 1999 RIF as pretense to terminate Plaintiff's employment, when the motivation was truly her gender.

Accordingly, the Court concludes Plaintiff establishes a *prima facie* case of gender discrimination. Moreover, Defendant sets forth a legitimate nondiscriminatory reason for Plaintiff's termination; she was laid-off as part of the 1999 RIF as she was considered the weakest performer in the COM Center. As such, the Court turns to whether or not Plaintiff demonstrates the offered reason is pretextual.

As previously stated, Plaintiff may prove pretext by showing either that:

1.    the proffered reason had no basis in fact,
2.    the proffered reason did not actually motivate the adverse action, or
3.    the proffered reason was insufficient to motivate the adverse action.

*Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir.1994).  To establish pretext, Plaintiff may not rely on her *prima facie* evidence.  Instead, she must introduce additional evidence of gender discrimination.  *Id.*

Plaintiff maintains she is able to demonstrate pretext as Defendant's contention she was the weakest performer is false.  Specifically, Plaintiff argues a genuine issue of material fact exists as to whether she or her male comparator, Mr. Hoffmann, were the weakest performers in the COM Center at the time of the 1999 RIF.  Additionally, Plaintiff maintains pretext is established by the fact she was selected for termination over Mr. Hoffmann, notwithstanding her significant seniority in the COM Center, and with Defendant, relative to Mr. Hoffmann and the existence of Defendant's seniority policy.

Defendant maintains Plaintiff was the weakest performer and the evidence does not undermine this assertion.  Further, Defendant argues Mr. Hoffmann is not an appropriate male comparator as he was not similarly situated to Plaintiff.  Specifically, Defendant contends the significant difference in their tenure and experience at the COM Center undermines Plaintiff's ability to utilize Mr. Hoffmann as a male comparator.

First, the Court concludes Plaintiff and Mr. Hoffmann were similarly situated. They held the same position at the same office and were both supervised by Mr. Ziegler.  This conclusion is not altered by Defendant's argument Plaintiff's greater tenure and length of experience render Mr. Hoffmann an inappropriate male

comparator. The case law upon which Defendant relies is distinguishable from the case at bar as none were the result of a reduction in force where a policy similar to Defendant's seniority policy was a factor. Additionally, in determining which individual to terminate in the 1999 RIF, Mr. Ziegler compared Plaintiff, and her abilities, to Mr. Hoffmann. Accordingly, Defendant itself deemed Mr. Hoffmann to be a comparator to Plaintiff.

Upon consideration, the Court concludes a genuine issue of material fact exists as to whether Defendant's offered reason was pretextual. At the time of the September, 1998 evaluations, Plaintiff and Mr. Hoffmann received the following scores[9]:

| Category | Plaintiff | Mr. Hoffmann |
| --- | --- | --- |
| Job Knowledge | D | D |
| Technology Skills | D | D |
| Customer Service | B | B |
| Initiative | C | C |
| Office Automation Skills | D | D |
| Dependability | B | B |
| Decisionmaking | B | C |
| Problem Solving | C | D |
| Communication Skills | B | C |

As such, Plaintiff and Mr. Hoffmann had equal abilities in five categories and Plaintiff's abilities exceeded Mr. Hoffmann's in three categories. However, Mr. Ziegler gave both Plaintiff and Mr. Hoffmann an overall rating of 4.

Moreover, without reviewing either personnel files or past performance

---

[9]This chart is based upon Exhibits 10 and 11 from Mr. Ziegler's deposition on December 7, 2004.

assessments (Ziegler Depo., p. 128), Mr. Ziegler determined, at the time of his

evaluations for the 1999 RIF, Mr. Hoffmann's performance exceeded Plaintiff's:

> Q:[Ms Myers]:    And what about the performance of Mr. Hoffmann did you believe to be superior to that of Ms. Storm's?
>
> A.:    Because he was on a - - like an upwards swing, doing tasks and stuff like that, and Nancy was just doing the normal, routine functions.
>
> * * *
>
> Q.:    And how specifically was Mr. Hoffmann on an upward trend? What did he - - What did he do that Ms. Storm did not do?
>
> A.    He was taking on projects, completing projects without help, assistance, doing all the daily functions and - - improving - - coming back to me with improved processes. And I never got that from Nancy.
>
> * * *
>
> Q.:    Is there any reason why Ms. Storm could not perform that task?
>
> A.:    Umm, I couldn't tell you right now. I don't know.
>
> * * *
>
> Q.:    Were there any areas in which Ms. Storm was superior to Mr. Hoffmann?
>
> A.:    She was probably a better writer.

(Ziegler Depo. pp. 124-126, 128). Also for consideration is the seniority policy

Defendant had in place for the 1999 RIF process.

When reviewing this evidence, reasonable minds could differ as to whether Mr.

Ziegler's assessment/comparison was properly supported and/or based upon objective

criteria. Additionally, differences could exist as to whether Mr. Ziegler ignored Plaintiff's

1998 review, in which she performed better than Mr. Hoffmann in three categories, in

order to avoid following the seniority policy. *See Spencer v. Stuart Hall Co., Inc.,* 173

F.3d 1124 (8th Cir. 1999). The resolution of these issues involve "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts", which, as stated above, are jury functions. *Anderson*, 477 U.S. at 255.

Accordingly, genuine issues a material fact exist and Defendant is not entitled to judgment as a matter of law on Plaintiff's claim of gender discrimination pursuant to Title VII.

2. *O.R.C. §4112.02*

Plaintiff also asserts a claim for gender discrimination pursuant to O.R.C. §4112.02, which makes it unlawful, "[f]or any employer, because of the...sex...of any person, to...discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." As Ohio law parallels Title VII analysis, the foregoing discussion of Plaintiff's Title VII claim is applied to her claim pursuant to O.R.C. §4112.02. *See Ohio Civil Rights Comm'n v. David Richard Ingram, D.C., Inc.,* 69 Ohio St.3d 89 (1994).

Accordingly, genuine issues of material fact exist and Defendant is not entitled to judgment as a matter of law on Plaintiff's claim of gender discrimination pursuant to O.R.C. §4112.02.

**C.      Age Discrimination**

The Age Discrimination in Employment Act (ADEA) provides: "It shall be unlawful for an employer . . . to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C.§ 623. To prevail in an action under the ADEA, a plaintiff must show his age had a "determinative influence on the

outcome" of the employment decision. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 141 (2000), *quoting, Hazen* Paper Co. v. Biggins, 507 U.S. 604, 610 (1993).

The *McDonald Douglas* burden shifting analysis set forth above also applies to Plaintiff's age discrimination case. Again, Defendant does not dispute Plaintiff establishes the first three prongs of the *prima facie* case. Instead, it maintains Plaintiff fails to offer "additional direct, circumstantial, or statistical evidence", *Barnes*, 869 F.2d at 1465, to satisfy the fourth prong.

Specifically, Defendant contends Mr. Hoffmann is not similarly situated to Plaintiff. Moreover, the statistical date upon which Plaintiff relies is flawed.

Plaintiff contends she establishes the fourth prong because Mr. Hoffmann was significantly younger than Plaintiff at the time of her termination and had less experience than her at the TNA position but, nonetheless, was retained over Plaintiff, notwithstanding the seniority policy. Moreover, Plaintiff argues her statistical evidence establishes at that the 1999 RIF had an adverse impact on employees in the protected age class.

The fourth prong of a reduction in force *prima facie* case requires a heightened proffer of evidence. *See, e.g., Ercegovich,* 154 F.3d at 357. Upon consideration, the Court concludes the evidence is not sufficient to establish Defendant singled Plaintiff out for discharge as a result of ageism. The statistical evidence presented by Plaintiff demonstrates nothing about age other than that some people were of various ages, some of whom were within the protected class, facts that in themselves are meaningless. "For statistics to be valid and helpful in a discrimination case, 'both the

1-03cv554                                                                                                    20

methodology and the explanatory power of the statistical analysis must be sufficient to permit an inference of discrimination.'" *Simpson v. Midland-Ross Corp.*, 823 F.2d 937 (6th Cir. 1987), *quoting Segar v. Smith*, 738 F.2d 1249, 1274 (D.C.Cir. 1984). As such, Plaintiff is left with the fact Mr. Hoffmann was younger, less qualified[10] and retained in contravention of the seniority policy.  This is insufficient circumstantial evidence to establish age discrimination.  This is distinguished from Plaintiff's gender case as she was able to present the additional evidence of Mr. Ziegler's alleged bias toward women in the work force, evidence upon which a reasonable trier of fact could conclude her termination was the result of gender discrimination. Plaintiff has failed to present evidence of a similar nature in support of her age discrimination claim.  Moreover, assuming Plaintiff satisfies the fourth prong of the *prima facie* case, she fails to come forward with additional evidence as to age discrimination which demonstrates Defendant's offered reason was pretextual.

Accordingly, Defendant is entitled to judgment as a matter of law on Plaintiff's claim for age discrimination pursuant to the ADEA.

### D.    Public Policy

*1.    Gender*

Upon consideration, Title VII and O.R.C. §4112.02 provide an adequate remedy for Plaintiff's gender discrimination claim.  Further, Plaintiff has not argued otherwise.  As such, as established in *Wiles v. Medina Auto Parts*, 96 Ohio St.3d 240 (2002), the jeopardy element of Plaintiff's public policy claim is not satisfied.  *See*

---

[10]The Court assumes of summary judgment purposes that Plaintiff was more qualified than Mr. Hoffmann.

*Satterwhite v. Faurecia Exhaust Systems,* 2004 U.S. Dist. Lexis 10282 (S.D. Ohio 2005).

Accordingly,  no genuine issues of material fact and Defendant is entitled to judgment as a matter of law on Plaintiff's claim for wrongful discharge in violation of public policy.

> 2.   Age

Notwithstanding the foregoing analysis applying with equal force to Plaintiff's claim for wrongful discharge for age discrimination, Plaintiff's public policy claim for age discrimination necessarily fails as she fails to establish a statutory claim.  *Hausler v. General Electric Co.,* 2005 U.S. App. Lexis 10983 (6th Cir. June 9, 2005).

## III.   <u>CONCLUSION</u>

For the reasons set forth above, the Court concludes genuine issues of material fact exist with respect to Plaintiff's gender discrimination claim pursuant to Title VII and O.R.C. §4112.02.  As such, the April 29, 2005 Motion of Defendant for Summary Judgment (Doc. 17 ) is hereby **DENIED** as to Counts II and IV.  However, genuine issues of material fact do not exist with respect to Plaintiff's federal age discrimination and state public policy claims.  Additionally, Plaintiff does not oppose summary judgment with respect to her claims for hostile environment, age discrimination pursuant to state law, and retaliation under state and federal.  Accordingly, the April 29, 2005

Motion of Defendant for Summary Judgment (Doc. 17) is hereby **GRANTED** as to

Counts I, III, V, VI, VII, VIII and IX.

      **IT IS SO ORDERED.**


                              **/s/Michael H. Watson_____**
                              **MICHAEL H. WATSON, JUDGE**
                              **UNITED STATES DISTRICT COURT**